**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| ROBERT and JENNIFER BEZINGUE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CV-81-HAB |
| | ) | |
| STEUBEN LAKES REGIONAL WASTE DISTRICT, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

For all the summary judgment briefing in this case, the question presented is a simple one: is an Indiana sewer district required to perform the construction work needed to connect a property to its sewer lines? The Court concludes that the answer to this question is no. Because Defendant was well-within its statutory rights to leave the work of connection to the Plaintiff landowners, summary judgment in favor of Defendant is appropriate.

**A.      Factual Background**

Both parties present an extensive recitation of the facts, but the Court finds that only a handful are relevant. Defendant is a regional utility district established under Indiana law. The focus of this litigation is Defendant's NED-I project, which involves providing sanitary sewers to 298 homes in Steuben County.

Connection to the sanitary sewer system requires the installation of a grinder station on each connecting parcel of land. Each landowner is given two options with respect to the grinder station. Option #1 requires the landowner to provide Defendant an easement, for free as Plaintiffs repeatedly note, that allows Defendant to install and maintain the grinder station and install a lateral connection to the main line. Option #2 allows the landowner to decline to give the easement,

leaving the landowner responsible for the installation and maintenance of the grinder station. In both scenarios, the landowner is provided the grinder station and related hardware free of charge and the actual connection fee (i.e., the initial amount charged by Defendant to use its sanitary sewer line) is the same.

All Plaintiffs elected option #2. Faced with the expense of installing and maintaining sewer equipment on their own, they filed a sixteen-page, nine-count complaint in Steuben County Circuit Court. (ECF No. 3). The suit was removed to this Court based on federal question jurisdiction, as Plaintiffs allege violations of the United States Constitution. (ECF No. 1). Plaintiffs subsequently amended their complaint (ECF No. 14), but nine counts remain.

Now before the Court are competing motions for summary judgment from the parties. Mercifully, Plaintiffs have withdrawn their claims under Counts I (alleging that the order to connect to the sewer system was invalid); VI (seeking an injunction preventing installation of the main sewer line); VII (alleging a taking as a result of Defendant dictating the location of the grinder pumps);  and VIII (alleging an equal protection violation because some landowners may be forced to share a grinder pump). Finding there to be no genuine issues of material fact, the Court will enter summary judgment for Defendant on all remaining counts.

**B.      Legal Analysis**

**1.      *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving

party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard. When evaluating each side's motion, the court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

**2.**     *Procedural Matters*

**a.**     *Lack of Certification of the Constitutional Issue*

One issue raised by the parties, but not discussed in any great depth, is the process for challenging the constitutionality of a state statute in federal court. Both parties cite to Ind. Code § 34-14-1-11, which requires a trial court to certify a constitutional challenge to the Indiana Attorney General, who must also be served with the complaint. However, that is an Indiana statute, governing Indiana procedure, with no relevance or applicability to this federal proceeding. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

The applicable statute is 28 U.S.C. § 2403. That statute provides, in part:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

28 U.S.C. § 2403(b). While § 2403 imposes an independent duty on the district court to certify the constitutional issue to the appropriate state attorney general, *Tonya K. by Diane K. v. Bd. of Educ. of City of Chi.*, 847 F.2d 1243, 1247 (7th Cir. 1988), the district court is often ill-equipped to do so on its own. This Court does not, and indeed cannot, read every pleading as it is filed. The Court often does not know the precise allegations in any civil case until a dispositve motion is filed or the deadline to do so has expired.

Understanding this reality, the Federal Rules of Civil Procedure require a party challenging the constitutionality of a statute to notify the district court of that claim. Fed. R. Civ. P. 5.1 provides, in part:

A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:

    (1)    file a notice of constitutional question stating the question and identifying the paper that raises it, if:

        (A)    a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or

        (B)    a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and

    (2)    serve the notice and paper on the Attorney General of the United States if a federal statute is questioned--or on the state attorney general if a state statute is questioned--either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Fed. R. Civ. P. 5.1(a)[1]. In order to comply with the Rule in this case, Plaintiffs would have had to file, separately from their complaint, a notice of constitutional question and serve that notice on the Indiana Attorney General through one of the identified methods.

Plaintiffs did none of these things. The closest Plaintiffs came was a letter to the Indiana Attorney General's Office attaching a copy of the state court complaint. (ECF No. 36-8). The letter, however, did not give notice of *this* action, nor does it appear to have been served via one of the methods authorized by the Rule. Moreover, no notice of the constitutional question appears on the docket. The Court concludes, then, that Plaintiffs have failed to comply with the requirements of Rule 5.1.

What is the consequence of Plaintiffs' failure? Compliance with Rule 5.1 and 28 U.S.C. § 2403 is not jurisdictional. *Tonya K.*, 847 F.2d at 1247. While some courts have simply refused to hear constitutional claims where the notice requirements have not been satisfied, *see*, *e.g.*, *Jones*

---

[1] Northern District Local Rule 5.1-1 further places specific timeframes and service requirements on the moving party.

*v. U-Haul of Mass. and Ohio Inc.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014), the Court cannot conclude that this approach is appropriate. Rule 5.1(d) expressly states that "[a] party's failure to file and serve the notice, or the court's failure to certify, does not forfeit a constitutional claim or defense that is otherwise timely asserted." The Court disagrees with Defendant, then, that lack of notice is a basis for the award of summary judgment.

The purpose of the notice requirement is to "give the Executive Branch both the time to make its views known and the opportunity to intervene." *Tonya K.*, 847 F.2d at 1247. Given this purpose, the Court sees two appropriate paths. If the Court were inclined to find the statute unconstitutional, it would stay proceedings on that issue to certify the issue to the Indiana Attorney General and provide that office the right to be heard. If, on the other hand, the Court were not so inclined, no such delay is necessary. The Indiana Attorney General, after all, is not likely to argue against an Indiana statute's constitutionality. Depriving him of the opportunity to be heard where the statute is upheld is, at worst, harmless.

As will be discussed more thoroughly below, the Court does not find the statute in question, Ind. Code § 13-26-11-5, to be unconstitutional. Accordingly, the notice issue is largely irrelevant. That said, counsel for both parties are advised that, should they litigate similar issues in this Court again (and it appears that counsel are somewhat regular combatants when it comes to Defendant's sewer projects), they would do well to review the procedural rules of *this Court*, not Indiana state courts, and conduct themselves accordingly.

**b.**     *Plaintiffs' Motion to Strike*

In response to Plaintiffs' motion for summary judgment and in support of its own, Defendant tendered the affidavit of Kenneth Jones, Jr. In summary, Jones, an employee of an

engineering firm hired by Defendant for the project, testifies that the main sewer line was placed within existing utility easements and not on Plaintiffs' land.

Plaintiffs assert that they are "prejudiced" by the affidavit for several reasons. They claim that Defendant failed to adequately identify the nature of Jones' testimony in its expert disclosures, that Defendant failed to provide an expert report for Jones, that Jones should have been designated by Defendant as its Rule 30(b)(6) deponent, and that Jones' opinions are supported by unauthenticated exhibits and otherwise lacks foundation. Plaintiffs' objections demonstrate a fundamental lack of understanding as to the Federal Rules of Civil Procedure and are overruled.

Plaintiffs first complain about Defendant's description of the subject matter of Jones' expected testimony. It appears that Defendant has twice disclosed Jones as a potential witness. In its initial disclosures, Defendant stated that Jones was expected to testify "concerning any topic concerning the design and/or construction of the project, including property rights of Plaintiffs, among many other potential topics of testimony." (ECF No. 40-1 at 3–4). In its subsequent expert disclosures, Defendant stated:

Mr. Jones is expected to testify as to his engineering background, as well as the engineering, surveying, planning and design and construction of the NED I sewage project, that is at the heart of the issues in Plaintiffs' Complaint. JPR was retained by the District to provide expertise in planning, designing, engineering and assisting in the construction of the sewage system. In addition, JPR assisted in offering expert opinions as to property acquisition and/or valuation issues. To the extent that any expert testimony is required as to the engineering, planning, design, and/or construction of the sewage project, JPR will offer testimony on those topics. JPR is expected to offer opinions as to the valuation of the property interests requested by the District in each of the Plaintiffs' properties.

(ECF No. 41-1 at 2). Plaintiffs find these disclosures inadequate because they do not state that Jones "would be rendering an opinion regarding the type of easements running alongside of the private lanes, their location, sizes, what utilities were located there, and other characteristics of the easement." (ECF No. 40 at 2–3).

Since Jones is a non-retained expert, Defendant's disclosure duties are governed by Federal Rule of Civil Procedure 26(a)(2)(C). With respect to subject matter, the Rule requires only that a disclosure must state "the subject matter on which the witness is expected to present evidence." Fed. R. Civ. P. 26(a)(2)(C)(i). This disclosure "is considerably less extensive than the report required by Rule 26(a)(2)(B)." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's notes to 2010 amendment. Accordingly, "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id*.

Defendant's disclosures satisfy the requirements of the Rule. Plaintiffs were on notice that Jones would testify regarding their "property rights," as well as the "surveying, planning and design" of the project. Defendant further disclosed that Jones would testify as to "property acquisition and/or valuation issues." All these topics speak to the very issues Plaintiffs now identify, including locations of easements and their characteristics. Anything more would be to require the very "undue detail" the Advisory Committee warned against.

Plaintiffs next object to the fact that Defendant never provided a report for Jones. This argument is a non-starter. Only those witnesses "retained or specifically employed to provide expert testimony" must submit an expert report. Fed. R. Civ. P. 26(a)(2)(B); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756–57 (7th Cir. 2004). Jones is an employee of the engineering firm hired by Defendant, personally involved in the project. He is not a retained expert, and no report was necessary.

Next, Plaintiffs assert that Jones should have been designated as Defendant's Rule 30(b)(6) deponent. The Court finds no merit in this argument. Under the Rule, a party names an entity as the deponent and sets forth the matters for examination. Fed. R. Civ. P. 30(b)(6). At that point, the entity "must designate one or more officers, directors, or managing agents" as a deponent. "If the corporation is to be accountable in this sense for what was said, the person examined must have been an officer, director, or managing agent at the time the deposition was taken." § 2103 Persons Subject to Examination—Corporations and Other Organizations, 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed.). Jones was not an officer, director, or managing agent of Defendant; he was an employee of a separate, independent business. Therefore, even if Jones would have been the best witness to testify regarding the topics identified in the Rule 30(b)(6) notice, he would not have been a proper deponent under the Rule.

9

Plaintiffs further argue that Jones' affidavit must be stricken because the exhibits to the affidavit are not "properly authenticated in any way." The Court need not determine whether the exhibits are properly authenticated because it does not matter if the exhibits are admissible. The Court is not required to strike inadmissible evidence: "the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as facts therein could later be presented in an admissible form." *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(c)(2)-(4)). The Court has little trouble concluding that the plat records, survey reports, and other documents relied upon by Jones could be made admissible at trial. That they may not be strictly admissible now is of no consequence.

Finally, Plaintiffs claim that Jones' opinions lack foundation because he fails to adequately explain his conclusion that the main sewer pipe was installed in a "non-exclusive utility easement." For an expert opinion to have a proper foundation, there must be "a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). Moreover, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Thus, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-TV Broad. Corp*., 395 F.3d 416, 419 (7th Cir.2005).

Jones' affidavit is not an example of *ipse dixit*. Jones recounts the steps he took to research the relevant properties and has attached the fruits of that research to his affidavit. He reviewed "all available surveys, plats, and sketches" and all vesting deeds for the properties along Lane 140, did an in-person visual inspection of the road, and relied on the surveys conducted by his company as

10

part of the project. Jones then lays out, in paragraph 8, the factual determinations he made from that research. He then, in paragraphs 9 through 13, sets out the opinions he drew.

The Court agrees with Plaintiffs that there could be more dot-connecting in the affidavit. However, that goes to the weight to be given to Jones' opinions, not their admissibility. Accordingly, the Court finds no reason to strike Jones' affidavit on any basis advanced by Plaintiffs.

As an alternative to striking, Plaintiffs ask for leave to conduct a deposition of Jones and further request additional time to brief the summary judgment issues following that deposition. The Court finds no basis to grant this request. As Defendant notes, Jones was identified as a potential witness in Defendant's May 30, 2019, initial disclosures, and as an expert witness in Defendant's September 3, 2019, expert disclosures. Defendant had no less than nine months to conduct a deposition of Jones after he was expressly disclosed as an expert witness. The fact that they chose not to is no one's fault but their own, and the Court sees no reason to alter the long-set deadlines in this case to accommodate Plaintiffs' inaction. Plaintiffs' Motion to Strike (ECF No. 40) is DENIED in full.

**3.      *Requiring Plaintiffs to Pay for Necessary Construction is not Contrary to Law***

Plaintiffs first argue, largely relying on *Steuben Lakes Reg'l Water Dist. v. Tucker*, 904 N.E.2d 718 (Ind. Ct. App. 2009), that Defendant acted "contrary to law" when it refused to perform construction on Plaintiffs' land after Plaintiffs denied Defendant an easement to do so. Plaintiffs claim that Defendant "cannot 'incentivize' the granting of an easement or 'punish' a homeowner for not granting an easement." (ECF No. 36 at 9). The Court disagrees.

First, a word about Plaintiffs' authorities. Most of Plaintiffs' arguments are little more than reliance on, and parroting of, the holdings of several Indiana Court of Appeals decisions. The Court

"must apply the law that would be applied in this context" by the Indiana Supreme Court. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000). If the Indiana Supreme Court has not spoken on the issue, this Court will treat decisions of the Indiana Court of Appeals as authoritative "unless there is a compelling reason to doubt that those courts have got the law right." *Id.*, (quoting *Rekhi v. Wildwood Indus.*, 61 F.3d 1313, 1319 (7th Cir. 1995)). The Court assumes, from the briefing of the parties and the Court's own research, that the Indiana Supreme Court has not passed on these precise issues. More important than the intermediate appellate court holdings, then, is the reasoning of the Indiana Court of Appeals. Only by reviewing the reasoning of the Indiana Court of Appeals can this Court determine if they "got the law right."

This Court has serious misgivings about the logical basis for *Tucker*, a case that is similar, if importantly different, to the case at bar. *Tucker* involved another of Defendant's construction projects, this time the installation of a new waste treatment plant and sewage collection system. The system required the installation of grinder pumps on some residents' property that would be maintained by Defendant. Just as in this case, Defendant sought voluntary easements from each landowner to install and maintain the grinder pumps. Those that agreed were charged a $2,775.00 connection fee, while those who did not agree were charged $8,191.60. *Tucker*, 904 N.E.2d at 719–20.

After reviewing the relevant statutes, the Court of Appeals concluded that this arrangement was contrary to law. The court did not point to any specific statutory prohibition, but instead relied on the fact that Defendant did not "point to statutory authority that permits it [to] charge one property owner a higher connection charge simply because he or she did not voluntarily convey an easement to" Defendant. *Id*. at 722. Based on the lack of explicit statutory authority, the court

held that "it was improper for [Defendant] to 'incentivize' the Tuckers to voluntarily give up their property by assessing two different connection charges." *Id*.

In the Court's view, requiring Defendant to point to explicit statutory authorization was error. The sewer district statutes do not mandate flat connection charges. Rather, "the district may charge for the connection on the basis of the pro rata cost of construction of a local or lateral sewer or water main sufficient to serve the property." Ind. Code § 13-26-11-7(a). The use of the term "pro rata" rather than the imposition of a flat fee is important. *Cf.* Ind. Code § 13-26-11-2(a)(1) (allowing sewer districts to charge a "flat charge" for sewer service). Pro rata ***does not mean equal***. Instead, it is defined as "proportionately according to an exactly calculable factor (such as share or liability)." Merriam-Webster Dictionary, pro rata, https://www.merriam-webster.com/dictionary/pro%20rata. In the case of I.C. § 13-26-11-7(a), the statute expressly defines the "calculable factor": it is the cost of construction. Thus, rather than mandating equal connection fees, the statute expressly permits different connections fees based upon each property's share of the cost of construction. Therefore, if denial of an easement results in a sewer district spending disproportionately more on construction costs for a certain property, then that property is to be charged accordingly.

Even if this were not the case, Indiana law does not require the kind of express statutory authorization that the Court of Appeals demanded. Indiana's Home Rule statutes require that "[a]ny doubt as to the existence of a power of a unit shall be resolved in favor of its existence." Ind. Code § 36-1-3-3(b). As if to put the point beyond dispute, the statute further provides that the "rule of law that any doubt as to the existence of a power of a unit shall be resolved against its existence is abrogated." I.C. § 36-1-3-3(a); *see also City of North Vernon v. Jennings Nw. Reg'l Utilities*, 829 N.E.2d 1, 4 (Ind, 2005) (holding that the Home Rule Act "abrogated the traditional

rule that local governments possessed only those powers expressly authorized by statute" in a case involving a regional sewer district). Therefore, unless expressly prohibited by statute, Defendant has "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." Ind. Code § 36-1-3-4(b)(2). The Court of Appeals' apparent requirement of express statutory authority in *Tucker*, nearly thirty years after the Home Rule Act was enacted into law, is difficult for this Court to reconcile with the relevant statutes. The Court, then, finds compelling reasons to doubt whether *Tucker* is an accurate statement of Indiana law.

Even if the Court found *Tucker* to be accurate, it would nonetheless find the case distinguishable from the case at bar. On its face, *Tucker* only prohibits regional sewer districts from charging "two different connection charges" based upon whether a landowner provides an easement. *Tucker*, 904 N.E.2d at 722. Here, the undisputed evidence shows that the I.C. § 13-26-11-7(a) connection fee is the same regardless of whether an easement is granted or not. The difference is who bears the construction cost for connecting a property to the sewer line.

Plaintiffs argue that this is a distinction without a difference, but the Court disagrees. Defendant has the power to require connection to its sewer system if certain statutory requirements are met. Ind. Code § 13-26-5-2(8). However, there is no requirement in the statutes that Defendant perform the construction necessary to accomplish the construction. The Court finds multiple areas of support for this conclusion. First, sewer districts have the authority to charge daily penalties to property owners that fail to connect to a sewer system. I.C. § 13-26-5-2(9); *Baird v. Lake Santee Reg'l Waste and Water Dist.*, 945 N.E.2d 711, 716 (Ind. Ct. App. 2011). It would make little sense, if the duty to connect a property was on the sewer district, for the same district to have the power to fine individuals who fail to connect. This would create perverse incentives on the part of a district to delay connection for the purposes of charging the statutory fine.

14

Perhaps more compelling, however, is that one of Plaintiffs' chosen authorities expressly permits a sewer district to leave the cost of connection to the landowner. Plaintiffs repeatedly cite to the two decisions involving the 2001 expansion of the Town of Clear Lake's sewer system: *Town of Clear Lake v. Hoagland Family Ltd. P'ship*, 75 N.E.3d 1081 (2017) ("*Hoagland I*") and *Hoagland Family Ltd. P'ship v. Town of Clear Lake*, 131 N.E.3d 731 (2019) ("*Hoagland II*"). *Hoagland I* was a loss for the landowner. In that case, the landowner argued that he could not be forced to connect to a sewer system until all equipment necessary to achieve the connection was in place. In that case, the town needed to install a grinder pump and a lateral line (both of which they would own) before the property could use the sewer system. The landowner argued that until the installation was accomplished, and he was paid for the use of his land, there was no "available" sewer line and no duty to connect. *Hoagland I*, 75 N.E.3d at 1085.

The Indiana Court of Appeals disagreed. It first noted that it was "the commonest exercise of police power of a state or city to provide for a system of sewers, and to compel property owners to connect therewith." *Id.*, quoting *Hutchinson v. City of Valdosta*, 227 U.S. 303, 308 (1913). The court ruled that a sewer district need only make available a working sewer line in order to compel connection (or, perhaps more accurately, an application for connection and payment of the connection fee). Since it was undisputed that the sewer line worked, the landowner could be compelled to connect. *Id.* at 1086-87. The matter was remanded to the trial court on the issue of penalties for failure to connect. *Id.* at 1088.

Two years later, the parties were back before the Court of Appeals. In *Hoagland II*, the issue was the amount of the connection fee. After prevailing in *Hoagland I*, the town enacted a nearly forty-fold increase in the connection fee it charged to property owners. The landowner argued that he should only be forced to pay the amount under the ordinance in effect at the time

15

the town initiated the litigation, not the amount under the new ordinance. The Court of Appeals agreed with the landowner. In the part of the opinion that Plaintiffs' repeatedly cite, the court stated:

> Hoagland argues that the ordinance in place at the time the Town made its original connection demand and/or at the time the Town filed the lawsuit should apply. We agree. The lawsuit began because Hoagland declined to gift an easement to the Town, which this Court acknowledged Hoagland was well within its rights to do, and the Town declined to install a "Y" in the public right-of-way, leaving Hoagland with no way to connect. Forcing Hoagland to pay the higher connection costs now in place is effectively punishing it for its refusal to gift an easement to the Town, which is bad public policy.

*Hoagland II*, 131 N.E.3d at 738. Much like *Tucker*, then, *Hoagland II* on its face speaks only to the statutory connection fee.

The court emphasized this point later in the opinion. In the conclusion, the court ordered the parties to "proceed in good faith through [the connection] process so that this issue can finally be laid to rest." *Id*. at 739. In a footnote, the court then stated:

> We decline to address Hoagland's argument that the Town is required to institute eminent domain proceedings. It is for the Town to decide the most prudent way to proceed, keeping in mind the best interests of its taxpayers, whether it be installation of a "Y," institution of eminent domain proceedings, or installation of the grinder pumps in the public right of way. We strongly encourage both parties to be reasonable in reaching a resolution on this issue.

*Id*., n. 7. From a logistical standpoint, the court is clear that a sewer district need only make the sewer line available for connection (the installation of the "Y" or installation of the grinder pump in the public right of way). A sewer district can, if it wants to, institute eminent domain to install equipment *but it does not have to*.

The Court finds that this footnote sinks Plaintiffs' case, as it effectively endorses the exact approach Defendant is taking here. The Town of Clear Lake made the same deal with landowners that Defendant made here: give us an easement and we will install the equipment necessary to

16

connect you to the sewer system. *Hoagland I*, 75 N.E.3d at 1083. The landowners that agreed were spared the cost of that work. The footnote makes clear that the plaintiff, in refusing to grant the easement, lost the savings that would have come from having the town do the work. Instead, the town was required only to make the connection available, the implication being that he would have to perform the connection at his own cost. Defendants actions in this case, then, are consistent with the options made available by the Indiana Court of Appeals in *Hoagland II*.

Defendant appears to have done everything it could to comply with the holdings of *Tucker*, *Hoagland I*, and *Hoagland II*. Defendant has charged a uniform connection fee to all landowners. Defendant has also, in a move not specifically addressed by either party, eliminated the need for the easement by transferring ownership of the grinder pump and related equipment to the landowners. Where the sewer district retains ownership of the connection equipment, "it will need to conduct eminent domain proceedings in order to obtain an easement on which to place the grinder pump." *Hoagland I*, 75 N.E.3d at 1085 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982)). This is true because "a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve." *Lorretto*, supra. The necessity for an easement does not exist here. The landowners will own the equipment and can choose to permit Defendant to install and maintain the equipment or not.

Plaintiffs have an absolute right to refuse Defendant's request for a free easement. However, like the exercise of many rights, it is not free of consequences. Here, the consequence of excluding Defendant is the responsibility of installing and maintaining sewer equipment on Plaintiffs' own dime. The Court finds this consequence fully consistent with Indiana statutes government regional sewer districts, Indiana's Home Rule Act, and the holding of *Hoagland I* and

*Hoagland II*. Accordingly, Defendant's actions were legal, and summary judgment will be entered on its behalf.

**4.      *Requiring Plaintiffs to Pay for Necessary Construction does not Violate Equal Protection Laws***

Plaintiffs further claim that forcing them to perform construction work after excluding Defendant from their property is violative of equal protection laws. Plaintiffs proceed under both the Fourteenth Amendment to the United States Constitution and Article I, Section 23 of the Indiana Constitution. The Court finds no violation of either provision and will enter summary judgment in favor of Defendant.

**a.**      *The Fourteenth Amendment*

Plaintiffs' first claim is that Defendant's actions violate the Fourteenth Amendment in that they have been denied "the equal protection of the laws." Const. Ament. XIV, § 1. The Fourteenth Amendment does not, nor has it ever, demanded absolute equality amongst all persons and entities.

> The equality at which the 'equal protection' clause aims is not a disembodied equality. The Fourteenth Amendment enjoins 'the equal protection of the laws', and laws are not abstract propositions. They do not relate to abstract units A, B and C, but are expressions of policy arising out of specific difficulties, addressed to the attainment of specific ends by the use of specific remedies. The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.

*Tigner v. Texas*, 310 U.S. 141, 147 (1940). Parties "cannot be heard to complain of the denial by the state of the equal protection of its laws merely on a showing that another has been fortunate enough to be the recipient of a favor at the hands of municipal officials, or under a local ordinance, which they have been denied." *McCoy v. Providence Journal Co.*, 190 F.2d 760, 764 (1st Cir. 1951).

Unless a statute employs a classification that is inherently invidious or that impinges on fundamental rights, areas in which the judiciary then has a duty to intervene in the democratic

process, courts properly exercise only a limited review power over a legislative body, the appropriate representative body through which the public makes democratic choices among alternative solutions to social and economic problems. *See San Antonio School District v. Rodriguez*, 411 U.S. 1 (1973). At the minimum level, the United States Supreme Court consistently has required that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives. *See*, *e. g.*, *Dandridge v. Williams*, 397 U.S. 471 (1970); *Mathews v. De Castro*, 429 U.S. 181 (1976).

Here, both parties have described the classification at issue as falling along the lines of those who granted an easement to Defendant and those who did not. Neither party has suggested that this classification is inherently invidious, nor does this Court find it to be. This would implicate a rational-basis standard.

The rational-basis standard employs a relatively relaxed standard reflecting courts' awareness that the drawing of the lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 314 (1976). Such action by a legislative body is presumed to be valid. *Id.*  Although an individual's right to equal protection of the laws does not deny the power to treat different classes of persons in different ways, it denies the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Johnson v. Robison*, 415 U.S. 361, 374–75 (1974) (quoting *Royster Guano Co. v. Virginia*, 253 I.S. 412, 415 (1920)).

Equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Lamers Dairy Inc. v. U.S. Dept. of Agr.*, 379 F.3d 466, 473 (7th Cir. 2004) (quoting *FCC v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993)).

To this point, the Court has discussed equal protection as the parties do: in the context of classifications. However, on the undisputed facts, the Court finds that a different standard should apply. Although neither side has provided the Court with a copy of the municipal ordinance, act, or other decree, the Court assumes that the legislative enactment does not separate any landowner into any specific classification. Instead, the "classification" came only after the homeowners made their decision regarding the easements. Accordingly, the allegation by Plaintiffs is that they have been intentionally treated different from others similarly situated and that there is no rational basis for the difference in treatment. This is a so-called "class of one," or in this case class of eighteen[2], action. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Geinosky v. City of Chi.*, 675 F.3d 743, 747 (7th Cir. 2012) ("The Equal Protection Clause has also come to be understood to protect individuals against purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes.").

The problem with applying a class of one equal protection analysis to land use decisions was identified by the concurrence in *Olech*. There, Justice Breyer noted the concern that to

---

[2] Despite the name, a "class of one" can contain any number of individuals; its distinguishing feature is that its constituents suffer unequal treatment for a reason not related to their membership in an identifiable, protected class. *Snyder v. Smith*, 7 F.Supp.3d 842, 864 (S.D. Ind. 2014).

"interpret the Equal Protection Clause in this way . . . would transform many ordinary violations of city or state law into violations of the Constitution." *Olech*, 528 U.S. at 565 (Breyer, J. concurring). Judge Posner further stated that liability based solely on "irrational and wholly arbitrary" treatment by the government would open "[b]reathtaking vistas of liability." *Tuffendsam v. Dearborn Cty. Bd. of Health*, 385 F.3d 1124, 1127 (7th Cir. 2004). For this reason, the Seventh Circuit has required that "to make out a prima facie case [of a 'class of one' denial of equal protection] the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Id*. (quoting *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000)).

The Court finds no such evidence, or even allegations, in this case. There is no suggestion in Plaintiffs' Amended Complaint or the designated evidence that Defendant bore any ill will or personal aminus towards Plaintiffs. *See*, *e.g.*, *Olech v. Vill. of Willowbrook*, 160 F.3d 386, 387 (7th Cir. 1998) (plaintiff alleged that disparate treatment due to prior lawsuit filed by plaintiff against defendant). There is no allegation or evidence that Defendant's actions were unrelated to its duties; i.e., the construction of the NED-I project. Instead, Defendant's conduct was directly related to, and caused by, the dealings between Plaintiffs and Defendant in the context of the NED-I project. Plaintiffs have, then, failed to make out a prima facie case for a class of one equal protection claim.

Even if the Court evaluated this case as the parties have, through a rational-basis analysis, Plaintiffs' position must still fail. Defendant's motivation in treating Plaintiffs differently is not complicated. When Plaintiffs refused to provide the requested easements, Defendant was faced with two choices. The first was to initiate eminent domain proceedings, pay lawyers to do so, and then pay Plaintiffs for the necessary access to Plaintiffs' land. The second was to respect Plaintiffs'

land rights and leave the necessary construction to them. The decision, then, came down to one thing: money. This sounds nefarious, but federal courts have routinely recognized that protecting the public fisc is a rational reason for treating one group separately from another. *See*, *e.g.*, *Srail v. Vill. of Lesle, Ill.*, 588 F.3d 940, 947 (7th Cir. 2009) (no equal protection violation where municipality refused to connect a subdivision to sewer lines where connection would have been cost prohibitive); *Idris v. City of Chi.*, 552 F.3d 564 (7th Cir. 2009); *TriHealth, Inc. v. Bd. of Com'rs, Hamilton Cty., Ohio*, 430 F.3d 783 (6th Cir. 2005); *Hassan v. Wright*, 45 F.3d 1063 (7th Cir. 1995).

Plaintiffs made the affirmative decision to place costs upon Defendant that other landowners did not. Given the limited funds that entities like Defendant often work with, Defendant had a rational basis for treating Plaintiffs differently to mitigate those costs. This is not an equal protection violation under the Fourteenth Amendment, either under a rational basis or class of one analysis. As such, Defendants are entitled to summary judgment on this claim.[3]

**b.**     *The Privileges and Immunities Clause*

Plaintiffs' also allege an equal protection violation under Article I, § 23 of the Indiana Constitution. This section, known as the Privileges and Immunities Clause, provides:

> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens.

---

[3] The last paragraph of Plaintiffs' Fourteenth Amendment argument is hard for the Court to understand. It states:

> In this case, the purpose of the connection law is to require those homeowners within the District to connect to the District's services. If the homeowner grants an easement, the District may enter the property, install equipment, and later enter the property to make repairs to that equipment. If a homeowner has not provided easement, it is up to the homeowner to install the equipment necessary to connect to the District's system. *This classification rationally furthers the purpose of the forced connection law and, therefore, there is no violation of equal protection*.

(ECF No. 36 at 14) (emphasis added). This appears to be a cut-and-paste from Defendant's brief (*see* ECF No. 31 at 25), but this does not explain why it appears in Plaintiffs' brief. This passage puts the Court in a difficult position. Plaintiffs have argued for a claim under the Fourteenth Amendment yet conceded that no claim exists in their concluding paragraph. The Court will treat this as an extended typographical error, but cautions the Plaintiffs that this kind of error may not be treated as benignly by other courts.

Ind. Const. Art. I, § 23.

While the Fourteenth Amendment and the Privileges and Immunities Clause "protect substantially identical rights," *Dortch v. Lugar*, 266 N.E.2d 25, 39 (Ind. 1971), they are nonetheless subject to different legal standards. *Collins v. Day*, 644 N.E.2d 72, 75 (Ind. 1994). The Indiana Supreme Court has announced two factors to be used when analyzing a claim under the Privileges and Immunity Clause.

> First, the disparate treatment accorded by the legislation[4] must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

*Id*. at 80. Finally, "in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion." *Id*. When an action is challenged under the Privileges and Immunity Clause, the action is presumed to be constitutional, and the burden is on the challenger to negate every conceivable basis which might have supported the classification. *Whistle Stop Inn, Inc. v. City of Indianapolis*, 51 N.E.3d 195, 199 (Ind. 2016). Because of the different legal standards, claims under the Indiana constitution must be given "independent interpretation and application" from Fourteenth Amendment claims. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013).

The classifications here are not complex: there are the landowners that granted Defendant an easement and those that did not. Plaintiffs argue that the disparate treatment here is not related to any "inherent characteristics" embodied by the classifications. Focusing on the dictionary definition of "inherent," Plaintiffs appear to argue that, for the purposes of the Privileges and Immunities Clause, a characteristic must be immutable, permanent, or otherwise inseparable from

---

[4] While § 23 speaks specifically to acts of the legislature, Indiana courts have extended it to other actions involving "sufficient state involvement." *Palin v. Ind. State Personnel Dept.*, 698 N.E.2d 347, 354 (Ind. Ct. App. 1998).

the individuals or entities in the classifications before they can be considered in the equal protection analysis.

The Court does not find that Indiana law draws so fine a line. For instance, in *Paul Stieler Enters., Inc. v. City of Evansville*, 2 N.E.3d 1269 (Ind. 2014), the Indiana Supreme Court analyzed an Evansville smoking ordinance that exempted riverboat casinos from its smoking prohibition. There, the court identified two distinguishing characteristics: whether the establishment is floating or land-based and whether the establishment is authorized to conduct gambling under Indiana's Riverboat Gambling statute. *Id*. at 1274. Neither of these characteristics are "inherent" as Plaintiffs define it. Floating operations can be moved inland. *See* Ind. Code § 4-33-6-4.5. Gambling licenses can be revoked. *See* Ind. Code § 4-33-6-11. These characteristics are not immutable yet were considered by the Indiana Supreme Court.

*Palin* provides another illustrative example. There, the Indiana Court of Appeals was asked to determine the constitutionality of the state's pay scale. The classifications drawn in that case were professional and technical employees on one hand, and executive employees on the other. *Palin*, 698 N.E.2d at 354. The Court of Appeals described the difference between the two classes, noting that the former, "requires technical science or engineering training, education or experience *and* provides technical expertise in administering the Environmental Management Act and other state environmental statutes." *Id*. (original emphasis). These are certainly characteristics of the former class, but they are hardly immutable. Professional and technical employees could receive a promotion to an executive job, and executives could earn the necessary education and experience to qualify as technical staff. The distinction lies only in the title each individual held. Stated another way, the classifications exist by virtue of state action, just as Plaintiffs allege the classifications exist here.

The Court finds that the classifications here are based on "inherent characteristics" of the class members. Each of the affected landowners made affirmative decisions either to grant the easement or to withhold it. While the landowners could, presumably, change these elections, that ability does not alter the fact that the characteristics are inherent, as opposed to extraneous, to the individuals. The lines are clear, definitive, and based on readily identifiable characteristics of the class members. Moreover, they are directly related "in situation and subject-matter" to the NED-I project. *Fountain Park Co. v. Hensler*, 155 N.E. 465, 467 (Ind. 1927). There is, then, nothing objectionable about the line Defendant has drawn.

The Court further finds that disparate treatment was reasonably related to the inherent characteristics of the class members. As discussed above, Plaintiffs' decision to withhold the easement put Defendant to additional costs if it were to perform necessary construction on its own. The decision to transfer this cost to Plaintiffs was not only reasonable but permitted by Ind. Code § 13-26-11-7(a)'s *pro rata* formulation for charging connection fees. The Court has no evidence that any landowner granting an easement was left to pay construction costs, or vice versa, meaning that the decision of whether Defendant performed construction was based entirely on Plaintiffs' decisions. *See Goodpaster*, 736 F.3d at 1076 (permitting different treatment of local bar vis-à-vis cigar and hookah bars due to the nature of the businesses). The first factor of the *Collins* analysis has been satisfied.

As to the second factor from *Collins*, the Court finds that the designated evidence shows that the preferential treatment was uniformly applicable and equally available to all persons similarly situated. The evidence demonstrates that all landowners that provided the easement paid nothing for the construction, while all landowners that withheld the easement were left to pay for the construction. This is the very definition of uniform applicability and equal availability. *Id.*

(upholding smoking ordinance that uniformly banned smoking from neighborhood bars). With both prongs of *Collins* satisfied, the Court concludes that there has been no violation of the Privileges and Immunities Clause. Accordingly, summary judgment is appropriate.

**5.      *The Court Declines to Enter a Declaratory Judgment with Respect to Plaintiffs' Septic Tanks***

Plaintiffs next claim that Defendant has committed an unconstitutional taking when it required them to destroy their private septic tanks without compensation. Plaintiffs proceed on two grounds. First, Plaintiffs claim that Defendant does "not have the statutory authority to require a homeowner to destroy their private [septic] system." (ECF No. 36 at 17). This is incorrect. Ind. Code § 13-26-5-2(8) expressly gives regional sewer districts, like Defendant, the power to "require the discontinuance of use of privies, cesspools, septic tanks, and similar structures" if they make their sewer system available. This statute provides the very statutory authority that Plaintiffs claim does not exist.

More broadly, Plaintiffs seek a declaration from this Court that, if they were forced to discontinue use of their septic tanks, a taking would occur. (ECF No. 14 at 12). The Court declines to make such a declaration. Under Indiana law, a trial court "may refuse to render or enter a declaratory judgment or decree where the judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Ind. Code § 34-14-1-6. Use of the declaratory judgment process is "usually unnecessary where another form of action provides a full and adequate remedy." *Comm. Hospitals of Ind., Inc. v. Estate of North*, 661 N.E.2d 1235, 1241 (Ind. Ct. App. 1996).

When considering a motion for declaratory judgment, the test to be applied is whether the issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether another remedy is more effective or efficient. *Dible v. City of Lafayette*, 713

26

N.E.2d 269, 272 (Ind. 1999) (citing *Volkswagenwerk, A.G. v. Watson*, 390 N.E.2d 1082, 1085 (Ind. Ct. App. 1979)). The determinative factor is whether the declaratory action will result in a just and more expeditious and economical determination of the entire controversy. *Dible*, 713 N.E.2d at 272.

Here, the Court finds that the entry of a declaratory judgment would not solve the issues between the parties, nor would it be the most effective or efficient way to address Plaintiffs' concerns. First, nothing about the declaration that Plaintiffs request would solve the issues between Plaintiffs and Defendant, even with respect to the septic tanks. Even if the Court found that a taking would occur, there would still be the issue of the value of that taking. Additional legal proceedings would be necessary, rendering a decision by this Court ineffective.

Furthermore, Indiana has an established, statutory procedure for exercising eminent domain. *See* Ind. Code § 32-24-1-1- *et seq.* This procedure would identify the precise land sought to be acquired, I.C. § 32-24-1-4(b)(3), and provides for the valuation of the land through the use of appraisers. I.C. §32-24-1-9. And, perhaps most importantly, those proceedings would occur after some action by Defendant that could be characterized as a taking. At this point, the designated evidence shows only that Defendant has sent a letter to landowners advising them of their duty under Indiana statutes and administrative codes to properly abandon their septic tanks. (ECF No. 36-6 at 4). Therefore, a future eminent domain proceeding, if necessary, would be a far more efficient and effective means of resolving the parties' dispute.

Even if the Court were inclined to weigh in at this premature point in time, the Court questions whether such a declaration would even be appropriate. It is well-settled that equitable relief is not available to enjoin an alleged taking of private property. *Knick v. Township of Scott, Pa.*, 139 S.Ct. 2162, 2176 (2019); *Cerajeski v. Zoeller*, 735 F.3d 577, 583 (7th Cir. 2013). Plaintiffs

do not seek an injunction, but their request is undeniably equitable. *SMDfund, Inc. v. Fort Wayne-Allen County Airport Authority*, 831 N.E.2d 725, 728 (Ind. 2005). Moreover, at least one federal court has found that the availability of state court remedies renders declaratory judgments in takings cases inappropriate. *Acorn Land, LLC v. Baltimore County, Md.*, 648 F.Supp.2d 742, 749–50 (D. Md. 2009)[5].

Considering this uncertainty, and in light of the Court's broad discretion in deciding whether to enter a declaratory judgment, the Court finds that discretion is the better part of valor. If any Plaintiff is required to destroy their septic tank without compensation, they can raise the matter through a state court under state takings law. With no such action having been taken, this Court finds no reason to wade into the dispute now. Plaintiffs' claim for declaratory judgment will be dismissed.

**6.      Ind. Code § 13-26-11-5 is not Unconstitutional**

Next, Plaintiffs ask the Court to declare Ind. Code § 13-26-11-5 unconstitutional. That statute states:

> A district may bill and collect rates and charges for the services to be provided after the contract for construction of a sewage works has been let and actual work commenced in an amount sufficient to meet the interest on the revenue bonds and other expenses payable before the completion of the works.

Plaintiffs claim that the statute's allowance for billing prior to services being rendered is unconstitutional under both the Fifth Amendment to the United States Constitution and Article I, § 21 of the Indiana constitution. The Court disagrees on both counts and will enter summary judgment in Defendant's favor.

---

[5] The district court was reversed in *Acorn Land, LLC v. Baltimore County, Md.*, 402 Fed.Appx. 809 (4th Cir. 2010). However, the thrust of the Fourth Circuit's ruling was that the plaintiff had exhausted its state court remedies, not that it did not need to resort to them in the first place. *Id.* at 814–15.

**a.** *The Statute does not Violate the Indiana Constitution*

Article I, §21 provides:

> No person's particular services shall be demanded, without just compensation. No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered.

IN CONST Art. I, § 21. At the most basic level, the parties dispute whether money falls under the definition of "property" as the term is used in the section; that is, whether Defendant's demand for money without services rendered can be a taking. The Court concludes that this section has from the very beginning been interpreted to apply to real property only. Accordingly, billing under I.C. § 13-26-11-5 cannot violate § 21, and summary judgment will be entered in Defendant's favor.

Only forty years after Indiana's constitution was ratified, the Indiana Supreme Court was faced with the question of whether taxation to pay government debt was an illegal taking. *City of Aurora v. West*, 9 Ind. 74 (1857). There, the Indiana Supreme Court found that a municipality could take private funds "through the taxing power, for public use, without any other compensation than the common benefit which the appropriation and expenditure of the proceeds of the tax produce." *Id*. at 83. Directly relevant to the issues here, the court went on to say, "[i]t is only the taking of specific pieces of the property of an individual, by virtue of the right of eminent domain, that is prohibited by the constitution, without special compensation." *Id*.

Plaintiffs (and Defendant) fail to cite *West*, but instead rely on *State v. Ensley*, 164 N.E.2d 342 (Ind. 1960) to argue that "property" in § 21 means "money." The Court struggles to determine how Plaintiffs reached this conclusion. *Ensley* is rife with language rebutting Plaintiffs' position. For instance:

> It is well-settled that acts done in the proper exercise of governmental powers and not directly encroaching on private property, although their consequences may

impair its use or value, do not constitute a 'taking' within the purview of the constitutional provision prohibiting taking of private property for public use without just compensation.

*Id*. at 346. And:

It is generally held that no damages should be allowed in a case of this kind for the loss of business, good will or profits from the business where only the land and not the business is being taken unless the statute under which the proceedings is had provides for such an element of damage.

*Id*. at 347 (quoting *State v. Stabb*, 79 N.E.2d 392, 394 (Ind. 1948). And:

While this court conceded that the facts in the record showed that appellants had suffered inconvenience and annoyance, it held that this did not amount to a compensable appropriation of the right of access. That ingress and egress was made more circuitous and difficult did not of itself constitute a 'taking' of private property.

*Id*. at 485–86. And:

The fact that access to appellees' property from Keystone Avenue may have been made more circuitous and inconvenient by the manner in which the improved highway was constructed does not, upon the record here, constitute a 'taking' of private property.

*Id*. at 486. And:

The widening of the highway followed by its subsequent transformation into a highway with a divider strip in the center, though contemporaneous and part of the same construction program, are separate improvements with respect to the appropriation of appellees' property. The property taken for the widening of the highway consisted in the physical taking of land, while the alleged impairment, if any, of appellees' right of access, by the construction of the divider strip, was merely the result of depriving northbound traffic of the opportunity to enter appellees' property directly from Keystone Avenue. This does not constitute a taking of appellees' property within the law of Eminent Domain.

*Id*. at 488. And:

The general rule is that there is no property right of an abutting property owner in the free flow of traffic past his property and thus no compensation can be claimed if traffic is diverted from his premises or made to travel a more circuitous route.

*Id*. at 489. And:

> No private property of appellees has been taken from them as a result of the construction of the divider strip. It is true that such strip affects the access to their property by preventing the free flow of northbound traffic directly into it from Keystone Avenue. Some of this traffic may even be diverted from their premises and all northbound traffic on Keystone Avenue is compelled to follow a more circuitous route in order to reach Little America. Even though such inconvenience to the public may result in some damage to appellees' business, such damage is not compensable because they have no property right in the free flow of traffic past their place of business.

*Id.* And:

> Since appellees have no property right in the free flow of traffic past their premises, the construction of the divider strip does not deprive them of any property right, and hence, any damage sustained thereby, by loss of business or depreciation in the value of their property, would not, for this further person, be compensable under [eminent domain law].

*Id.* at 490. Each of the above quotes, and indeed *Ensley* in toto, draw a clear distinction: confiscation of land is a taking, deprivation of money is not.

Plaintiffs further argue that the United States Supreme Court's decision in *United States v. Sperry Corp.*, 493 U.S. 52 (1982), stands for the proposition that "money is money." (ECF No. 44 at 15). Whatever existential truth Plaintiffs' characterization holds, it does not appear to be the holding of *Sperry*. Moreover, *Sperry* does not help Plaintiffs' cause. On this point, *Sperry* states:

> Sperry argues, however, that we should not even consider the amount deducted by the Federal Reserve Bank of New York because the deduction was akin to a "permanent physical occupation" of its property and therefore was a *per se* taking requiring just compensation, regardless of the extent of the occupation or its economic impact. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441, 102 S.Ct. 3164, 3179, 73 L.Ed.2d 868 (1982). The Court of Appeals agreed with Sperry. 853 F.2d 904, 906–907 (CA Fed.1988). It is artificial to view deductions of a percentage of a monetary award as physical appropriations of property. Unlike real or personal property, money is fungible. No special constitutional importance attaches to the fact that the Government deducted its charge directly from the award rather than requiring Sperry to pay it separately. If the deduction in this case were a physical occupation requiring just compensation, so would be any fee for services, including a filing fee that must be paid in advance. Such a rule would be an extravagant extension of *Loretto*.

31

*Id*. at 62 n.9. The *Sperry* court is clear in this footnote: a fee charged by the government is not a taking. Since the statute in question permits Defendant to charge the fee in question, no constitutional question is raised.

*West* resolves Plaintiffs' claim. Absent a taking through "the right of eminent domain," there is no constitutional issue. I.C. § 13-26-11-5 does not implicate an eminent domain issue. Under *West*, demanding only Plaintiffs' money is not, and cannot be, a violation of the Indiana constitution. Summary judgment in Defendant's favor is warranted.

**b.**     *The Statute does not Violate the Fifth Amendment*

The Court first notes that Plaintiffs have not cited a single case interpreting the Takings Clause of the Fifth Amendment to the United States Constitution. It is well-settled that failure to cite authorities in support of an argument constitutes waiver of an issue. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 921 (7th Cir. 1997) (citing *Tyler v. Runton*, 70 F.3d 458, 464 (7th Cir. 1995); *see also Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 n. 1 (7th Cir. 1996) (finding argument waived because appellants neither identified specific evidence objected to nor cited authority for their position); *Salazar v. City of Chicago*, 940 F.2d 233, 242–243 (7th Cir. 1991). And, as noted above, "[t]his court has no duty to research and construct legal arguments available to a party." *Head Start Family Educ. Program, Inc. v. Cooperative \*922 Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir. 1995)). The Court finds, then, that any claim relating to the United States Constitution has been waived. To avoid any appearance that we are "sacrific[ing] substantive justice on the altar of administrative convenience," however, the Court will briefly address the Fifth Amendment claim. *See Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225, 230 (7th Cir.1992), *certiorari denied*, 511 U.S. 1068.

Much like its Indiana counterpart, the federal Constitution has never been interpreted to bar assessment for the payment of public works. More than one hundred years ago, the United States Supreme Court addressed a constitutional takings claim by landowners that had been taxed for the construction of a road. The Supreme Court described the act of governmental unit levying the tax as "an orderly procedure under a scheme of local improvements prescribed by the legislature and approved by the courts of the state as consistent with constitutional principles." *French v. Barber Asphalt Pav. Co.*, 181 U.S. 324, 345 (1901). After a thorough review of the relevant case law, the Supreme Court concluded:

> The major part of the cost of a local work is sometimes collected by general tax, while a smaller portion is levied upon the estates specially benefited.
>
> The major part is sometimes assessed on estates benefited, while the general public is taxed a smaller portion in consideration of a smaller participation in the benefits.
>
> The whole cost in other cases is levied on lands in the immediate vicinity of the work.
>
> In a constitutional point of view either of these methods is admissible, and one may be sometimes just, and another at other times. In other cases it may be deemed reasonable to make the whole cost a general charge, and levy no special assessment whatever. The question is legislative, and, like all legislative questions, may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal than it would be were the legislature required to levy it by one inflexible and arbitrary rule.

*Id*. at 343. Stated succinctly, local government can make decisions regarding payment for local improvements without running afoul of the Constitution.

The most basic problem with Plaintiffs' argument is that it envisions a system of taxation and governmental services that does not exist. Plaintiffs seem to view government like a fast food restaurant. They would like to pick services from a menu, paying only after those services have been rendered. This is not reality; just ask any childless Indiana citizen who pays property taxes, or any healthy young person that pays social security taxes. Governments regularly do, and must,

33

collect sums to pay not only for services rendered, but also to pay for future projects. This is a necessity; the entities that perform work for government would appreciate payment without having to wait for tax revenues to cover the entirety of their bill. This is not a mystery except, it seems, to Plaintiffs.

To find I.C. § 13-26-11-5 unconstitutional on the basis advanced by Plaintiffs would be to invalidate all taxation to the extent it is applied to future services. The Court will not take such a drastic, and legally unsupported, step. The statute does not violate the Takings Clause of the Fifth Amendment, and summary judgment will be entered in favor of Defendant.

**7.**      *Defendant's Request for an Easement is not a Taking*

Next, Plaintiffs argue that Defendant committed a taking when it requested, and then incentivized, the granting of an easement. Once again, Plaintiffs provide no legal support for their position. This argument, too, has been waived. *Onwuteaka*, supra.

Even had the argument not been waived, it is a non-starter. A taking occurs when the government uses its property in a way that destroys private property. *Murphy v. Vill. of Plainfield*, 918 F.Supp.2d 753, 759 (N.D. Ill. 213) (citing *Stop the Beach Renourishment, Inc. v. Fl. Dept. of Env. Prot.*, 560 U.S. 702 (2010)). The entire reason that this lawsuit exists is because Plaintiffs have successfully excluded Defendant from their land. Stated another way, Plaintiffs' suit is based, in its entirety, on Defendant's inability (and Plaintiffs argue, failure) to enforce its rights of eminent domain. Defendant's request for an easement is not a taking, and summary judgment will be entered in Defendant's favor.

**8.**      *Plaintiffs have Designated No Evidence Supporting their Claim that Defendant Laid Sewer Pipes on their Property*

Finally, Plaintiffs argue that Defendant laid its sewer pipes on their property and that this constitutes an uncompensated taking. In support of this claim, Plaintiffs offer the Affidavit of

34

Robert Bezingue. (ECF No. 36-5). According to Mr. Bezingue, he visited the Steuben County Recorder's Office to search his property's records. He was "only able to find one (1) utility easement that was associated" with his property. (*Id*. at 2). That easement was "for the installation of electrical lines and granted to NIPSCO. (*Id*.). The records relating to that easement were then attached to the affidavit. (*Id*. at 3–5). At the times relevant to this case, Bezingue owned a lake home on Lane 140 along Otter Lake. (ECF No. 31-12 at 2).

In response, Defendant offers the Affidavit of Kenneth Jones. (ECF No. 39-1). Jones has been a licensed surveyor since 2007 and is the Vice President and Chief Financial Officer of JPR, the surveying company hired for the NED-I project. As part of this litigation, Jones reviewed all available surveys, plats, and sketches along Lane 140, as well as the "most recent" vesting deeds along Lane 140. (*Id*. at 2). Jones also visually inspected the road. Based on his review, Jones determined that Lane 140 acts as a "non-exclusive utility easement" that "appears to benefit most, if not all, the parcels along the corridor and burdens those parcels through which existing utilities pass." (*Id*. at 3). Jones further noted that "[u]tilities such as natural gas, electricity, and telephone exists both above and below ground throughout the Lane 140 corridor and have been present for many years." (*Id*.). Finally, Jones concluded that "the main sewer pipeline installed along Lane 140 was properly installed in a non-exclusive utility easement." (*Id*. at 4).

Plaintiffs claim that Defendant's use of Jones' affidavit merely sets up a "my facts are better than your facts" argument, implicitly asserting that a genuine issue of material fact exists. (ECF No. 44 at 4). The Court disagrees. First, it bears noting that, on its face, Bezingue's affidavit speaks to only one property on one road. If Bezingue's affidavit can create a genuine issue of fact, then, it can only do so with respect to his property. For the remaining Plaintiffs, absolutely no evidence has been introduced suggesting that the pipe was installed on their land. Quite to the

contrary, the designated evidence demonstrates that the remaining Plaintiffs either affirmatively state that the pipe was not installed on their land and/or that they are not making a claim regarding the location of the pipe. (ECF No. 31 at 9–20). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Since no evidence has been offered in support of the claims of anyone other than the Bezingues, summary judgment must be entered on those claims.

With respect to the Bezingues's property, the Court agrees with Defendants that any discrepancy between the findings of Jones and Bezingue can be attributed to the thoroughness of the review and the qualifications of the reviewers. Some of the property records relating to Lane 140 stretch back nearly a century. (*See*, *e.g.*, ECF No. 39-1 at 38). Certainly, where the relevant evidence is comprised of nearly a "century's worth of deed boundary descriptions and transfer information," expert testimony can "assist[] the court in understanding the foundational facts at issue in the case." *Katzin v. United States*, 120 Fed.Cl. 199, 212 (2015). Defendant has provided that testimony in the form of Jones' affidavit.

The Court does not doubt the veracity of Bezingue's affidavit. The Court believes that, given his lack of expertise in researching property records, he found only the single utility easement. However, Bezingue's testimony does not rule out the existence of other easements. Jones, who by all accounts conducted a much more thorough review of the property records than Bezingue, states that he found just such an easement. Therefore, as Defendant argues, "the Affidavit of Robert Bezingue and Ken Jones' Affidavit are not actually in conflict with one another." (ECF No. 39 at 11). There is no designated evidence that contradicts Jones' expert opinion, leaving the Court with no evidence upon which it could find that Defendant's sewer pipe

was installed on the Bezingues' property. Accordingly, there is no evidence of a taking, and summary judgment in Defendant's favor is appropriate.

**C.      Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 29) is GRANTED in part. Summary judgment in favor of Defendant will be entered on Counts I, II, III, V, VI, VII, VIII, and IX. Count IV is DISMISSED without prejudice. Plaintiffs' Motion for Summary Judgment (ECF No. 35) is DENIED. Plaintiffs' Motion to Strike (ECF No. 40) is also DENIED. The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiffs.

SO ORDERED on December 14, 2020.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT